**Nos. 24-3852, 24-3880**

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

IN RE: EAST PALESTINE TRAIN DERAILMENT

REV. JOSEPH SHEELY, ZSUZSA TROYAN, TAMARA FREEZE, SHARON LYNCH, CARLY TUNNO,

*Interested Parties-Appellants*,

HAROLD R. FEEZLE, SUSAN E. SCHEUFELE, DAVID J. SCHEUFELE, ROLLERENA AUTO SALES, LLC, ROSEMARY MOZUCH, CHARLES MOZUCH, JON LUKE AFFELTRANGER, MARILYN FIGLEY, EDWARD E. BARNHOUSE, on behalf of themselves and all others similarly situated; LAURA MANN et al.,

*Plaintiffs-Appellees,*

v.

NORFOLK SOUTHERN RAILWAY COMPANY; NORFOLK SOUTHERN CORPORATION,

*Defendants-Appellees*.

On Appeal from the United States District Court for the Northern District of Ohio, No. 23-cv-00242

## MOTION TO DISMISS APPEALS

PAUL D. CLEMENT
  *Counsel of Record*
MATTHEW D. ROWEN
KYLE R. EISWALD[*]
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

[*] Supervised by principals of the firm who are members of the Virginia bar

*Counsel for Plaintiffs-Appellees*

July 9, 2025

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Rollerena Auto Sales, LLC, DalQan Holdings, LLC, Valley View MPH LLC, and Competition & Luxury Vehicle Club of Darlington, LLC, individually certify that they do not have a parent corporation and that no publicly held corporation owns more than ten percent of their respective stock.[1]

---

[1] Only Rollerena Auto Sales, LLC, was named as a Plaintiff-Appellee in these appeals. To ensure compliance with Federal Rule of Appellate Procedure 26.1(a), Plaintiffs-Appellees include the other businesses in the corporate disclosure statement that were class representatives in the district court proceedings.

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ......................................................... i

TABLE OF AUTHORITIES.......................................................................... iii

INTRODUCTION ...................................................................................... 1

BACKGROUND ....................................................................................... 1

ARGUMENT ............................................................................................ 4

CONCLUSION ......................................................................................... 14

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*Bowles v. Russell*,
   551 U.S. 205 (2007)...................................................................4, 11

*Fidel v. Farley*,
   534 F.3d 508 (6th Cir. 2008)................................................12

*Henderson ex rel. Henderson v. Shinseki*,
   562 U.S. 428 (2011)...............................................................11

*In re Cardizem CD Antitrust Litig.*,
   391 F.3d 812 (6th Cir. 2004)...................................... 5, 6, 7

*In re Polyurethane Foam Antitrust Litig.*,
   2016 WL 6599570 (6th Cir. June 20, 2016) .........................5

*In re Polyurethane Foam Antitrust Litig.*,
   178 F.Supp.3d 635 (N.D. Ohio 2016)...................... 7, 8, 12

*Jones v. Gross*,
   2025 WL 610508 (6th Cir. Jan. 3, 2025) .............................11

*Patterson v. Comm'r of Soc. Sec.*,
   2025 WL 314208 (6th Cir. Jan. 13, 2025) ...........................11

*Pharmacy Corp. of Am. v. Concord Healthcare Grp., LLC*,
   708 F.App'x 275 (6th Cir. 2018)........................................5, 7

*Powers v. Citizens Union Nat'l Bank & Trust Co.*,
   329 F.2d 507 (6th Cir. 1964)..................................................5

*Tanner v. Yukins*,
   776 F.3d 434 (6th Cir. 2015)..................................................4

## Statutes and Rules

28 U.S.C. §2107(a) ............................................................... 3, 9, 10

28 U.S.C. §2107(b) ........................................................................9

28 U.S.C. §2107(c) ................................................................... 4, 9

Fed. R. App. P. 4(a)(1) ................................................................... 3, 9, 10

Fed. R. App. P. 4(a)(5) ...................................................................9

## INTRODUCTION

Just as courts cannot ignore statutorily mandated limits on their jurisdiction, litigants cannot ignore court orders. Consistent with those bedrock principles, these appeals should be dismissed for failure to pay the duly ordered appeal bond.

## BACKGROUND

This case arises out of the February 2023 derailment of Norfolk Southern Train 32N in East Palestine, Ohio. In the wake of the derailment and the subsequent "vent and burn" of five rail cars, 1st.Am.Master.Class.Action.Compl., R.138 ¶¶179, 183-85, 279, PageID#1802, 1804, 1830-833, affected individuals and businesses filed multiple lawsuits in the Northern District of Ohio, Graham.Decl., R.518-2 ¶¶13-14, PageID#10945-946. The district court ultimately consolidated 32 pending cases into one master class action. Cons.Order, R.28, PageID#562-563 & n.3, 569 (consolidating 31 cases); Cons.Order, R.30, PageID#666 (adding 32nd suit).

The class action proceeded through early motions practice and discovery. After months of negotiations undertaken in parallel with the active litigation, the parties reached a settlement. Graham.Decl., R.518-2 ¶¶53-58, PageID#10955-957. The settlement creates a non-reversionary cash fund of $600 million, Settlement, R.452-2 §II.SS, PageID#6014, to be allocated to "all Persons and Businesses residing, owning[,] or otherwise having a legal interest in property, working, or

owning or operating a business within a 20-mile radius of the Derailment Site, from February 3, 2023 to the Settlement Date," *id.* §II.QQ, PageID#6013.

The district court held a fairness hearing on September 25, 2024. Fair.Hear.Tr., R.553, PageID#14423. After considering the objections, and hearing testimony that the settlement fund exceeds all recoveries in other similar cases, *see id.*, PageID#14504, the court affirmed "the fairness and adequacy and reasonableness of the settlement," *id.*, PageID#14537. The court accordingly entered orders approving the settlement agreement as well as Class Counsel's request for attorneys' fees and the proposed distribution plan. Final.Appr.Order, R.557, PageID#14580-586; Atty.Fee.Order, R.556, PageID#14547-579; Distr.Plan.Order, R.555, PageID#14543-546.

Reverend Joseph Sheely, as well as Zsuzsa Troyan, Tamara Freeze, Sharon Lynch, and Carly Tunno (collectively, "Objectors") timely appealed the district court's order granting final approval to the settlement. *See* Sheely.Not.App., R.558, PageID#14587, Troyan.et.al.Not.App., R.570, PageID#14768. This Court then consolidated Reverend Sheely's appeal (No. 24-3852) with the other objectors' appeal (No. 24-3880) to the extent that they would be submitted to the same panel for consideration. Cons.Order, CA6.No. 24-3852, Dkt.33.

After Objectors noticed their appeals, the district court granted Plaintiffs' motion for an appeal bond. Bond.Order., R.733, PageID#51926. That order, which

the district court issued on January 16, 2025, required Objectors to post the bond within 14 days.  *Id.*, PageID#51937.

Rather than post the bond, seek a stay of the bond order, or file a notice of appeal from the bond order (or take any other action in district court), Objectors filed motions in this Court to reduce or eliminate the bond in their already-pending appeals from the final approval of the settlement.  Sheely.Mot., CA6 No. 24-3852, Dkt.35-1; Troyan.Mot., No. 24-3880, Dkt.40-1.  This Court denied those motions.  Order, CA6 No. 24-3852, Dkt.47.  The motions "ask[ed this Court] to review the merits of the appeal bond decision" and specifically disclaimed any intent to have the Court treat them as seeking "a stay."  *Id.* at 2.  The Court honored counsel's stated intent and held that it "lack[s] jurisdiction to address the merits of the bond order in these appeals" from the settlement approval.  *Id.*  The Court further stated that it would deny the motions even if it were to construe them as seeking a stay, as "that relief is not warranted."  *Id.* at 2-3.[2]

Back in district court, Objectors moved to extend the time within which to appeal the bond order, as the default 30-day deadline had long since passed.  Extens.Mot., R.876, PageID#60386; *see* 28 U.S.C. §2107(a); Fed. R. App. P. 4(a)(1)(A).    The    district    court    denied    that    motion    as    untimely.

---

[2] Objectors filed a motion for reconsideration in this Court.  Reconsid.Mot., CA6 No. 24-3852, Dkt.49.  As of the date of this filing, that motion remains outstanding.

3

Order.Denying.Extens., R.923, PageID#61235.  As Objectors admitted, a motion to extend the appeal deadline must be filed "within the 30 days following the initial 30-day appeal period."  Mem.ISO.Extens., R.876-1 at 3 n.1, PageID#60393 (quoting *Tanner v. Yukins*, 776 F.3d 434, 438 (6th Cir. 2015)).  That time limitation is set by statute, *see* 28 U.S.C. §2107(c), and it is jurisdictional, *see Bowles v. Russell*, 551 U.S. 205 (2007).  But Objectors did not comply with it.  The order granting Plaintiffs' motion for a bond was issued on January 16, 2025, Bond.Order., R.733, PageID#51926, so any motion to extend "the time to file a notice of appeal" with respect to that order needed to be filed by March 20, 2025.  But Objectors did not file their motion until March 21.  *See* Extens.Mot., R.876, PageID#60386.  The district court accordingly denied Objectors' motion to extend the deadline as untimely.  Order.Denying.Extens., R.923, PageID#61235.[3]  Thus, as things stand, Objectors have failed to post the appeal bond for this appeal that the district court ordered be posted no later than January 30, 2025, and they have neither appealed the bond order itself nor asked for it to be stayed.

## ARGUMENT

"Failure to post an appeal bond is grounds for dismissal of the appeal."  *In re Polyurethane Foam Antitrust Litig.*, 2016 WL 6599570, at *1 (6th Cir. June 20,

---

[3] Objectors have appealed the order denying their motion.  Not.Appeal, R.975, PageID#68814; *see* CA6 No. 25-3342.  Plaintiffs intend to respond in due course to the opening brief filed in that appeal.

2016); *accord Pharmacy Corp. of Am. v. Concord Healthcare Grp., LLC*, 708 F.App'x 275 (6th Cir. 2018); *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 818 (6th Cir. 2004); *Powers v. Citizens Union Nat'l Bank & Trust Co.*, 329 F.2d 507, 508-09 (6th Cir. 1964). "When considering whether dismissal is appropriate, we look to factors such as the prejudice to the other parties, the demonstrated justification for the failure to post the bond, and the merits of the underlying appeal." *In re Cardizem*, 391 F.3d at 818. Each of these factors supports dismissal of these consolidated appeals.

**A.** Objectors' appeals have caused significant prejudice to Plaintiffs and the rest of the class. Settlement class members have had their lives upended by the devastating derailment and wish to move on—including, for some, by actually moving their families to areas unaffected by the derailment. But before they can do so, many (if not most) class members need the substantial monetary compensation the settlement agreement makes available. The settlement "compensates communal or shared losses" of "use and enjoyment of property, shared use of personal property within the home, [and] communal expenses associated with relocation or displacement." Fair.Hear.Tr., R.553, PageID#14494-495. It also allows eligible businesses to recover "actual net business financial loss" that occurred because of the derailment and sets aside funds for personal injuries arising out of exposure to toxins. Settlement, R.452-2 §XIII.C.2.a-b, C.3, PageID#6024.

Unsurprisingly, response to the settlement was overwhelmingly positive. 54,925 claims were filed as of September 5, 2024.  Graham.Decl., R.518-2 ¶64, PageID#10959.  Only 86 class members filed objections, and only 370 households and 47 businesses opted out, yielding an opt-out/objection rate of less than 1%.  *Id.* ¶65, PageID#10959.  By any reasonable measure, the settlement is a far better alternative for the class than the delay and risk that would accompany what would likely be a yearslong slog through trial and appeal (and perhaps back down for more).  Indeed, to our knowledge, the settlement provides for the largest-ever recovery in this type of case.  That likely explains why over 99% of the class members support it and only five total objectors—less than 0.01% of the class—have appealed.

Yet while the five Objectors' appeals lack merit, *see infra*, they have perversely succeeded in preventing the more than 50,000 claims that have been submitted as part of the settlement from being paid, and they will continue to delay settlement payments until such time that the appeals are resolved, which could be many more months.  Objectors' appeals have thus had "the practical effect of prejudicing the other injured parties by increasing transaction costs and delaying disbursement of settlement funds."  *In re Cardizem*, 391 F.3d at 818.  Such prejudice weighs strongly in favor of dismissing the appeals for failure to pay the bond.  *See id.* (dismissing appeal for failure to post a bond).  And that is particularly true here given that Objectors "neither sought a stay in the district court" nor "ma[d]e a good

6

faith proffer of a lesser amount." *Id.* Indeed, Objectors "have not indicated *any* intention to ever post the appeal bond." *Pharmacy Corp.*, 708 F.App'x at 276 (emphases altered).

**B.** Objectors lack any valid justification for failure to pay the bond. *See* Bond.Order, R.733, PageID#51932-933 (so finding).

1. Reverend Sheely made only a conclusory statement that he was "not in a financial position to post any sort of a bond." Sheely.Decl., R.660-1, PageID#46309. Such a conclusory statement devoid of supporting detail is not sufficient to demonstrate inability to post a bond. *See In re Polyurethane Foam Antitrust Litig.*, 178 F.Supp.3d 635, 642 (N.D. Ohio 2016) ("Here, while Objectors contend that the appeal bond would be burdensome, they do not provide any evidence indicating a financial inability to pay."). And while the other Objectors provided somewhat more detail regarding their respective financial positions, *see* Troyan.Decl., R.725-3, PageID#51815; Freeze.Decl., R.725-4, PageID#51817; Lynch.Decl., R.725-5, PageID#51820; Tunno.Decl., R.725-6, PageID#51823-824, it was not unreasonable—much less clearly erroneous—to find that Objectors' conduct belies such assertions.[4]

---

[4] Nor would it be a basis to sustain Reverend Sheely's appeal (No. 24-3852) in all events, given that the bond order is joint and severable, *see* Bond.Order, R.733, PageID#51938.

As the district court pointed out, none of the Objectors is proceeding *in forma pauperis* in these appeals, Bond.Order, R.733, PageID#51932, which "weighs in favor of an appeal bond," *In re Polyurethane*, 178 F.Supp.3d at 642. And Objectors' own actions are inconsistent with the notion that their financial ability to pursue the appeals depends on resolution of the bond issue. Despite the pendency of the bond proceedings and the possibility of a sizeable appellate bond, Objectors went forward in briefing their appeals rather than asking for a stay of the appellate schedules until the bond issue was resolved. Indeed, even after the district court ordered Objectors to pay the bond, Objectors explicitly disclaimed any intent to have this Court treat their motions challenging the bond as motions for "a stay." Order 2, CA6 No. 24-3852, Dkt.47.

Nor is that the only indicium. Objectors have proceeded in this Court as if the outcome of the bond proceedings were irrelevant to their appellate plans. To be sure, Reverend Sheely initially filed a declaration stating that he was "choos[ing] not to pursue this appeal" because of "[t]he bond requirement." Sheely.Decl., R.660-1, PageID#46311. But he later filed a new, superseding declaration in this Court, while the bond issue remained pending, clarifying that he "decided to proceed with an appeal and hereby authorize and instruct my attorney, David M. Graham, to file and pursue the appeal on my behalf." Sheely.Decl., CA6 No. 24-3852, Dkt.31-2.

2. To the extent Objectors contend that they have not yet posted the bond because they are still trying to challenge the order imposing it, that argument goes nowhere. Objectors were not free to simply ignore the non-stayed bond order, and yet they never sought a stay and missed the deadline to appeal it. Congress has provided that "no appeal" may be taken from any "judgment, order or decree" in a civil case "unless notice of appeal is filed, within thirty days after the entry of such judgment, order or decree." 28 U.S.C. §2107(a); *see also* Fed. R. App. P. 4(a)(1)(A).[5] That 30-day deadline is only a default; "[t]he district court may[] … extend the time for appeal upon a showing of excusable neglect or good cause." 28 U.S.C. §2107(c). But a court's power to extend the notice-of-appeal deadline is narrowly circumscribed. As relevant here, a court may do so only "upon motion filed not later than 30 days after the expiration of the time otherwise set for bringing appeal." *Id.*; *see also* Fed. R. App. P. 4(a)(5)(A). That deadline is statutory, jurisdictional, and non-extendable.[6]

---

[5] The time is 60 days if the United States or one of its components or officers is a party, 28 U.S.C. §2107(b); *see also* Fed. R. App. P. 4(a)(1)(B), but that is not the case here, so the deadline is 30 days.

[6] A different, more generous deadline to seek an extension applies where "a party entitled to notice of the entry of a judgment or order did not receive such notice from the clerk or any party within 21 days of its entry." 28 U.S.C. §2107(c). But that longer deadline is obviously not applicable here. Objectors plainly had notice of the bond order; they asked this Court to set it aside (or reduce it) on the merits.

Those explicit statutory time limits preclude any challenge to the district court's order requiring Objectors to post an appeal bond.  The district court issued that order on January 16, 2025.  *See* Bond.Order., R.733, PageID#51926.  Objectors had "thirty days after the entry of [that] order" to file a notice of appeal.  28 U.S.C. §2107(a); *see also* Fed. R. App. P. 4(a)(1)(A).  They did not do so.  While Objectors filed timely notices of appeal challenging the order granting final approval to the settlement, they did not file "a separate notice of appeal" challenging the "final order entered after judgment" granting Plaintiffs' motion for a bond.  Order 2, CA6 No. 24-3852, Dkt.47.  Objectors thus failed to comply with §2107(a) as to that order.

They also failed to comply with §2107(c) as to the bond order.  Indeed, that is not disputed.  After this Court denied Objectors' motions to eliminate or reduce the appeal bond, Objectors filed a motion in district court for an extension of the notice-of-appeal deadline.  *See* Extens.Mot., R.876, PageID#60386.  But as Objectors themselves have acknowledged, they filed that motion on March 21, 2025, which was "*31 days* after expiration of the original 30-day appeal period, which ended on February 18, 2025 (Monday, February 17, 2025, being Presidents Day and the 30th day being February 15, 2025, a Saturday)."  Mem.ISO.Reconsid.Mot. 7-8, CA6 No. 24-3852, Dkt.49-1 (emphasis added).  In other words, their extension motion came after the statutory deadline, which is why the district court was compelled to deny it.  *See* Order.Denying.Extens., R.923, PageID#61235.

"Compliance with the deadline in §2107 is a jurisdictional prerequisite that this court may not waive." *Patterson v. Comm'r of Soc. Sec.*, 2025 WL 314208, at *1 (6th Cir. Jan. 13, 2025). But Objectors did not comply with "the statutory provisions permitting the district court to extend or reopen the time to appeal." *See Jones v. Gross*, 2025 WL 610508, at *1 (6th Cir. Jan. 3, 2025). And while Objectors have raised various equitable arguments in support of their untimely appeal, "a party's failure to file a notice of appeal within [the statutory time] period could not be excused based on equitable factors, or on the opposing party's forfeiture or waiver of any objection to the late filing." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 433 (2011) (discussing *Bowles*, 551 U.S. 205). The upshot is that Objectors remain on the hook to post the appeal bond—which, four months on, they have failed to do.

**C.** Finally, Objectors are unlikely to succeed on the merits of their appeals challenging final approval. *See* Order 3, CA6 No. 24-3852, Dkt.47 ("Objectors have not … shown[] that they are likely to succeed on the merits of their appeals from the final approved settlement."); Bond.Order, R.733, PageID#51931 ("On this record, the Court believes Appellants will not be successful in their independent appeals."). Appellate courts review a "district court's approval of a settlement as fair, adequate, and reasonable for abuse of discretion." *Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir.

2008).  Overcoming this standard is a "serious uphill battle."  *In re Polyurethane*, 178 F.Supp.3d at 640.  Objectors cannot climb it here, or even come close.

Objectors' arguments on appeal simply rehash their arguments below, which the district court correctly rejected.  *See* Final.Appr.Order, R.557, PageID#14580-586; *see also* Fair.Hearing.Tr., R.553, PageID#14458, 14479-480 & 14537-538. Plaintiffs-Appellees have exhaustively explained in their Response Brief why Objectors' arguments do not move the needle.  *See* Pls.Resp.Brief.Sheely, CA6 No. 24-3852, Dkt.39; Pls.Resp.Brief.Troyan, CA6 No. 24-3880, Dkt.44.  In brief: The class representatives and class counsel (more than) adequately represented the class, defeating well-counseled dispositive motions and securing the largest-ever recovery for a case of this type (and doing so in record time).  Fair.Hearing.Tr., R.553, PageID#14536-538; Final.Appr.Order, R.557, PageID#14582-583.  The settlement and distribution plan treat class members equitably.  *See* Fair.Hearing.Tr., R.553, PageID#14538; Final.Appr.Order, R.557, PageID#14583.  And the settlement was negotiated at arms-length and free from collusion, with the assistance of a highly qualified mediator (retired United States District Judge Layn Phillips) over the course of multiple mediation conferences and lengthy negotiations. Fair.Hearing.Tr., R.553, PageID#14536-37; Final.Appr.Order, R.557, PageID#14583; *see also* Phillips.Decl., R.518-5, PageID#11085.  In short, "[t]he record resoundingly supports the fairness of the settlement," Bond.Order, R.733,

PageID#51931, and the district court did not abuse its discretion in recognizing as much and overruling the smattering of meritless objections.

More than 50,000 claimants are waiting to receive the proceeds of this groundbreaking settlement. All that stands in their way are these appeals, filed by five total objectors. While Objectors are entitled to challenge the settlement and take an appeal, Plaintiffs and the rest of the class are equally entitled to the appeal bond the district court ordered. Yet, months after the payment deadline came and went, Objectors still have not posted a cent or taken any other timely action to stay, appeal, or comply with that order. That kind of conduct cannot be rewarded. The proper remedy under these circumstances is a dismissal of these appeals so that class members can collect their much needed and long deferred compensation.

## CONCLUSION

For the foregoing reasons, and in light of Objectors' failure to pay the court-ordered appeal bond, this Court should dismiss these appeals.

Respectfully submitted,

s/Paul D. Clement
PAUL D. CLEMENT
MATTHEW D. ROWEN
KYLE R. EISWALD[*]
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

[*] Supervised by principals of the firm who are members of the Virginia bar

*Counsel for Plaintiffs-Appellees*

July 9, 2025

14

## CERTIFICATE OF COMPLIANCE

1.  This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,978 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

2.  This motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), as required by Federal Rule of Appellate Procedure 27(d)(1)(E), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 with 14-point Times New Roman font.

Date:  July 9, 2025

s/Paul D. Clement
Paul D. Clement

## CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system.  I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<u>s/Paul D. Clement</u>
Paul D. Clement